**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Terrell Avalon Lancaster,<br>Plaintiff<br>v.<br>Clark County, et al.,<br>Defendants | Case No.: 2:25-cv-01986-JAD-EJY<br><br>**Order Denying Motion to Reconsider, Overruling Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, and Dismissing Case**<br><br>[ECF Nos. 10, 12] |

Plaintiff Terrell Avalon Lancaster sues Clark County, the District Attorney's Family Support Division (DAFS), various district attorneys, DAFS agents, and state-court judges for alleged constitutional violations stemming from his state-court child-support proceedings. I recently denied his motion for a temporary restraining order because he hadn't shown a likelihood of success on the merits of his claims, finding that they were likely barred by various immunities and the abstention doctrine established in *Younger v. Harris*.[1] Lancaster moves for reconsideration of that finding. And about a month later, the magistrate judge screened Lancaster's first amended complaint under 28 U.S.C. § 1915(e)(2) and she also concluded that all of his claims are barred by immunities and the *Younger* doctrine. She thus recommends dismissing his complaint, and Lancaster objects to that recommendation.

I overrule Lancaster's objection and adopt the magistrate judge's recommendation in full. Lancaster's claims are barred by absolute judicial and prosecutorial immunity. His arguments that the defendants' actions were not prosecutorial or were taken without jurisdiction are not supported by the facts alleged in the complaint or the exhibits he attaches to his complaint. The

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* doctrine also bars this court's intervention in the state-court issues raised in Lancaster's complaint, and Lancaster has not shown that the bad-faith exception to that doctrine applies. Finally, Lancaster's municipal-liability claim fails because he hasn't identified a policy, custom, or practice that led to the alleged deprivation of his constitutional rights. I also find that amendment would be futile, so I dismiss Lancaster's first amended complaint without leave to amend. And I deny Lancaster's motion for reconsideration of my TRO order as moot because this case is now dismissed.

## Background[2]

Lancaster's first amended complaint focuses on his state-court child-support proceedings. He contends that in November 2022 DAFS agent Oscar Hernandez-Fuentes called him and asked him to sign an "acceptance of service" document.[3] Hernandez-Fuentes told Lancaster that he wasn't "accepting anything" and the document was merely needed to "create a docket number" for his child-support case.[4] Lancaster signed the document, which he contends "was the sole basis for the state court's personal jurisdiction over" him.[5] In 2023, DAFS initiated an order to show cause, alleging that Lancaster was not paying his child support, but that order was never served.[6] District Attorney (DA) Corey J. Roberts stated in court that he never acted upon that order to show cause, but Lancaster alleges that Roberts sent a referral to the DMV to suspend Lancaster's commercial driver's license based on his nonpayment status.[7]

[2] The following facts are taken from Lancaster's first amended complaint (ECF No. 11). They are not intended as findings of fact.

[3] ECF No. 11 at 3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4.

In September 2025, Lancaster attended a hearing in his child-support case.[8] Lancaster alleges that during that hearing, Lancaster alleges that Hearing Master Sylvia Teuton orally agreed to stay the proceedings, but the minute order memorializing that hearing "falsely stated that [his] motion was 'denied' and that the judgment was deemed 'res judicata.'"[9] Lancaster contends that Teuton "fabricated this ruling in the written record to strip [him] of his right to a *de novo* review by the District Judge and to create a false record for appeal."[10] And at another hearing later that month, Lancaster voiced an objection to the hearing master's recommendation that he must pay down his overdue child-support obligations. But a few days later, Lancaster alleges, Roberts filed a "notice of entry of order" certifying that Lancaster didn't file an objection.[11] Lancaster contends that Roberts made a "material falsehood . . . constituting perjury and fraud upon the court to finalize a void judgment."[12]

Lancaster brings four claims arising from these events. He alleges that defendants Roberts, Hernandez-Fuentes, and DA Steven Wolfson deprived him of property (his commercial driver's license) without due process and in violation of the Fourth Amendment because that consequence was derived from a never-served order to show cause.[13] He alleges that defendants Roberts and Teuton violated his due-process rights when Roberts falsely certified that Lancaster didn't object to the hearing master's recommendation and when Teuton said she'd stay his case,

---

[8] *Id.*; *see also id.* at 46–61 (hearing transcript, attached to Lancaster's complaint).

[9] *Id.*; *see also id.* at 63 (minute order).

[10] *Id.* at 4.

[11] *Id.* at 4–5.

[12] *Id.* at 5.

[13] *Id.*

but didn't.[14] He brings a civil-rights conspiracy claim against all defendants, alleging that they coordinated to deprive him of his rights.[15] And he alleges that Clark County is liable under *Monell v. Department of Social Services*[16] because defendant Judge Adriana White "ratified the fraud" by telling Lancaster in a hearing that she was not "here to oversee the District Attorney" and would not provide relief on some of these claims.[17] Lancaster seeks declaratory and injunctive relief declaring the state-court judgment void and to cease all collection activities. He also seeks compensatory and punitive damages.

## Discussion

### A. The magistrate judge correctly determined that Lancaster's claims are barred by judicial and prosecutorial immunity.

On February 11, 2026, United States Magistrate Judge Elayna J. Youchah screened Lancaster's first amended complaint under 28 U.S.C. § 1915(e)(2).[18] She concluded in part that Hearing Master Teuton is entitled to absolute judicial immunity and Roberts and Hernandez-Fuentes are entitled to absolute prosecutorial immunity.[19] Lancaster objects to each of these findings,[20] so I review them de novo.

---

[14] *Id.* at 6.

[15] *Id.*

[16] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[17] ECF No. 11 at 6.

[18] ECF No. 12.

[19] *Id.* Judge Youchah also concluded that Lancaster cannot sue District Attorney Steven Wolfson in his official capacity because the Eleventh Amendment bars suit against him. *Id.* at 6. And she found that the claims against Judge Adriana White are barred by judicial immunity. *Id.* at 5. Lancaster does not object to those findings, so I adopt them without further analysis. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); L.R. IB 3-2(b).

[20] ECF No. 14.

***1. Hearing Master Teuton is entitled to judicial immunity.***

"Judges are absolutely immune from damages actions for judicial acts taken within the jurisdiction of their courts."[21] A judge lacks immunity only when she acts in the "clear absence of all jurisdiction"[22] or performs an act that is not "judicial" in nature.[23] "[I]n determining immunity," courts "examine the nature of the function performed, not the identity of the actor who performed it."[24] I find that this judicial immunity is extended to Teuton's role as a hearing master because her job's "functions bear a close relation to the judicial process."[25]

The magistrate judge concluded that all of Lancaster's allegations regarding White and Teuton "concern actions normally performed by judges."[26] Lancaster objects to that finding as to Hearing Master Teuton. He contends that Teuton's oral representation that she would "stay" his case "divested" her court "of jurisdiction to issue a substantive ruling on the merits until the stay was lifted."[27] So, he argues, Teuton's later written order denying his motion was "an act taken when no judicial power existed to act."[28]

The basis for Lancaster's claims regarding the "stay" Teuton referred to during his hearing are plainly contradicted by the hearing transcript that Lancaster attaches to his first

---

[21] *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam).

[22] *Bradley v. Fisher*, 80 U.S. 335, 351 (1871).

[23] *Stump v. Sparkman*, 435 U.S. 349, 360 (1978).

[24] *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (cleaned up).

[25] *Demoran v. Witt*, 781 F.2d 155, 156–57 (9th Cir. 1985) (extending immunity to hearing officers).

[26] ECF No. 12 at 5.

[27] ECF No. 14 at 11.

[28] *Id.*

amended complaint.[29] As the transcript evidences, at that hearing the DA requested that Lancaster be held in contempt for failing to fulfill his child-support obligations based on his failure to comply with an order to show cause regarding his missed payments.[30] Though Teuton agreed with Roberts's contempt request, she "stayed" ruling on that request only because Lancaster's case had several other motions and objections pending.[31] Teuton explained that the show-cause order would continue and that she was "not going to find contempt today," but she was "reducing the arrears to judgment."[32] Her written order does not contradict those oral pronouncements.[33]

But even if I accepted Lancaster's interpretation of Teuton's ruling—that she initially stayed his case, then backtracked in a written order—she is still entitled to judicial immunity from his claims. Lancaster complains of Teuton's rulings, and issuing rulings is quintessentially a judicial act,[34] even if those rulings contradict each other. Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved

---

[29] *See Wilhelm v. Rotman*, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper . . . ." (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (holding that the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

[30] ECF No. 11 at 49, 56.

[31] *Id.* at 59.

[32] *Id.* ("Well, I agree with the DA's request today, but because this is coming up on all these other motions and objections, I'll stay it. He's on an order to show cause and that will continue. I'm not going to find contempt today. I am reducing the arrears to judgment. Show cause shall continue, and all these motions are going to be heard in the other court.").

[33] *See id.* at 63.

[34] *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (noting that "[r]uling on a motion is a normal judicial function").

to the" litigant.[35] Though Lancaster contends that Teuton's acts were erroneous or improper, they are still judicial acts, and they thus fall under protection of judicial immunity.[36] So I adopt the magistrate judge's recommendation that Lancaster's claims against Hearing Master Teuton be dismissed because she is entitled to judicial immunity.

### *2. DA Roberts is entitled to prosecutorial immunity.*

The magistrate judge concluded that DA Roberts is entitled to absolute prosecutorial immunity from suit because his alleged conduct—making false representations to the state court about the viability of the 2023 order to show cause and whether Lancaster objected to a hearing-master recommendation—is the type of action "going to the core of the prosecutor's role as an advocate for the state; that is, submitting argument to the court."[37] Lancaster objects to that finding, contending that by submitting an order erroneously stating that Lancaster did not file an objection to the hearing master's recommendation, Roberts "certified a fact that he knew to be false" and thus was "acting as a complaining witness," not a prosecutor.[38] He cites to Supreme Court's decision in *Kalina v. Fletcher*[39] to support this argument.[40]

*Kalina* is not applicable to the facts in this case. In *Kalina*, the deputy prosecuting attorney, under penalty of perjury, "personally vouched for the truth of the facts set forth" in a

---

[35] *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (cleaned up).

[36] Lancaster's contention that Teuton's orders were a "clerical act of falsifying the record," ECF No. 14 at 12, is also unpersuasive. Lancaster's allegations characterize Teuton's actions as rulings, and that's clearly what they are. The facts simply don't support an inference that Teuton was performing clerical actions in Lancaster's case.

[37] ECF No. 12 at 7.

[38] ECF No. 14 at 5.

[39] *Kalina v. Fletcher*, 522 U.S. 118 (1997).

[40] ECF No. 14 at 3–5.

certification for the determination of probable cause supporting a motion for an arrest warrant.[41] But that certification contained inaccurate factual statements, and the defendant who was arrested because of the certification sued the prosecutor for the violation of his right to be free from unreasonable seizures.[42]

The Court concluded that while the prosecutor was entitled to immunity for her work in preparing the motion for arrest, she was not immunized from the factual misrepresentations she made in the sworn certification. It held that in certifying the document, the prosecutor "performed an act that any competent witness might have performed."[43] The Court noted that the prosecutor's "drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court," as well as her "selection of the particular facts to include in the certification" were all part of the prosecutor's role as an advocate and thus would be protected by immunity.[44] But it distinguished the act of certifying those facts under penalty of perjury, explaining that "testifying about facts is the function of the witness, not of the lawyer."[45]

DA Roberts's actions here fall into the category of activities that the Supreme Court considered prosecutorial in nature. Roberts was not certifying or testifying to the truth of underlying facts in a prosecution. He was presenting information to the court concerning whether or not an objection—a court document—had been filed. His representations to the state

---

[41] *Kalina*, 522 U.S. at 121.

[42] *Id.* at 121–22.

[43] *Id.* at 129–30.

[44] *Id.* at 130.

[45] *Id.*

court about the never-served order to show cause were also made in his role as an advocate and officer of the court. That conduct falls squarely within the role of an advocate, not a testifying witness. So I conclude that Roberts is entitled to absolute prosecutorial immunity for the conduct alleged in Lancaster's complaint.

### *3. Hernandez-Fuentes is also entitled to prosecutorial immunity.*

The magistrate judge also concluded that DAFS agent Hernandez-Fuentes is entitled to prosecutorial immunity for his alleged acts related to misrepresenting the "legal nature of a document" that initiated Lancaster's child-support case. She relied on *Briscoe v. LaHue*[46] for the proposition that, because the document was a waiver of service of process, Hernandez-Fuentes's conduct was clearly associated with the judicial process and thus entitled to protection.[47] Lancaster objects, contending that Hernandez-Fuentes's conduct occurred "*before* the case was effectively initiated against" him.[48] He theorizes that the magistrate judge's reliance on *Briscoe* was misplaced because that case dealt with a witness's statements "made during judicial proceedings," while Hernandez-Fuentes's conduct "occurred before any judicial proceeding existed."[49]

I find that Hernandez-Fuentes is entitled to prosecutorial immunity for his conduct. This conclusion flows directly from the Ninth Circuit's opinion in *Meyers v. Contra Costa County*

---

[46] *Briscoe v. LaHue*, 460 U.S. 325 (1983).

[47] ECF No. 12 at 7 (citing *Briscoe*, 460 U.S. at 335 ("the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process"), then citing *Ridgway By & Through Ridgway v. Cordes*, 967 F.2d 590, at *1 (9th Cir. 1992) ("Public officials are entitled to absolute immunity if they perform functions integral to the judicial process.") (table disp.)).

[48] ECF No. 14 at 6.

[49] *Id.* at 7.

*Dep't of Social Services*.[50] In that case, the court acknowledged that a social worker "should be accorded prosecutorial immunity for his role in the initiation of dependency proceedings" against the defendant.[51] Hernandez-Fuentes's conduct was obviously in service of initiating prosecution against Lancaster. This is different from cases in which courts have concluded that investigatory conduct, like fabricating evidence during a preliminary investigation or making false statements as a fact witness in a sworn affidavit, is not shielded from suit.[52] Because Hernandez-Fuentes was engaging in acts integral to the judicial process—initiating a case and preparing orders to file with the court—I find that he is entitled to absolute prosecutorial immunity.

### B. The magistrate judge correctly concluded that Lancaster's *Monell* claim could not survive dismissal.

Lancaster alleges that Clark County violated his rights under the theory of municipal liability established in *Monell*, contending that Judge Adriana White is a "final policymaker" for the county and that she "established a custom and policy of deliberate indifference to prosecutorial misconduct and record fabrication" when she told him during a hearing that she wasn't "here to oversee the District Attorney."[53] The magistrate judge concluded that Lancaster hadn't stated a *Monell* claim because "judges are not municipal decisionmakers when they act as a state judicial actor" and Judge White's isolated comment was insufficient to establish a custom or practice.[54]

---

[50] *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154 (9th Cir. 1987).

[51] *Id.* at 1156.

[52] *See Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (citing cases).

[53] ECF No. 11 at 6.

[54] ECF No. 12 at 8.

Lancaster concedes that Judge White is not a municipal actor, so he requests leave to amend his complaint and instead allege, "upon information and belief," that "DAFS maintains a custom or practice of obtaining waivers of service through misrepresentation" and "Clark County's training program for DAFS case managers fails to address constitutional requirements for service of process."[55] But Lancaster's new allegations, based on the facts alleged in his complaint—that Hernandez-Fuentes misrepresented the service-of-process document he asked Lancaster to sign—are insufficient to permit the inference that the county had a custom or practice related to service of process. Lancaster's "upon information and belief" statements are merely recitations of the *Monell* standard; they do not allege facts to support the theory that a widespread practice similar to what Lancaster has experienced is occurring. So I deny Lancaster's request to amend his *Monell* claim because any such amendment would be futile.

### C. Lancaster's declaratory and injunctive-relief claims are barred by the *Younger* abstention doctrine.

The magistrate judge also concluded that Lancaster's declaratory and injunctive-relief claims are barred by the *Younger* abstention doctrine.[56] That doctrine generally precludes federal courts from interfering "with pending state judicial proceedings absent extraordinary circumstances."[57] Lancaster objects to the magistrate judge's determination, claiming that she overlooked evidence that would satisfy the "bad-faith exception" to abstention under *Younger*.[58]

---

[55] ECF No. 14 at 13.

[56] ECF No. 12 at 3–4.

[57] *Middlesex Cnty. Ethics Comm. v. Garden State B. Ass'n*, 457 U.S. 423, 431 (1982).

[58] ECF No. 14 at 9–10.

"In the *Younger* abstention context, bad faith 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'"[59] Bad faith "might be shown by repeated harassment, bias, or when the proceeding is brought with no legitimate purpose."[60] Lancaster contends that the fact that the 2023 order to show cause was never served resulted in "structural bad faith" that "cannot possibly result in a valid judgment."[61]

Lancaster's allegations do not surmount the high threshold for a bad-faith finding. Lancaster has not alleged that the prosecution brought his child-support proceedings without the reasonable expectation of obtaining valid findings against him. He instead takes issue with one of the steps the prosecution took within his case. At most, the prosecutor's actions amount to a procedural error, not a showing that DAFS agents or the DAs were intentionally pursuing Lancaster for an illegitimate purpose. The documents attached to Lancaster's complaint confirm that he did miss child-support payments, and that is the reason the DA's office and DAFS initiated the proceedings against him. One unserved order does not constitute bad faith. So I find that the *Younger* abstention doctrine applies for the reasons Judge Youchah explained in her order,[62] and I conclude that the bad-faith exception does not apply.

---

[59] *Yelp, Inc. v. Paxton*, 137 F.4th 944, 951 (9th Cir. 2025) (cleaned up).

[60] *Stockton v. Brown*, 152 F.4th 1124, 1138 (9th Cir. 2025) (citations omitted).

[61] ECF No. 14 at 10.

[62] Lancaster does not object to the general conclusion that *Younger* applies—he objects only to the magistrate judge's failure to consider his bad-faith arguments. So I do not rehash the *Younger* standard or analysis here.

**D. Lancaster's improperly filed supplemental notices do not warrant a different outcome.**

Lancaster filed two "notice[s] of supplemental authority" with information that he deems relevant to my review of the magistrate judge's recommendations.[63] This district's local rules prohibit supplementation without first seeking leave of court.[64] Lancaster did not seek leave before filing his supplemental notices, so I need not consider them. But, even if I did, they would not change my ruling. In his first supplement, Lancaster contends that there is no ongoing state proceeding to abstain from under *Younger* because the state district court has "disclaimed jurisdiction" while the underlying child-support issues are being appealed to the Supreme Court.[65] But state-court proceedings are deemed ongoing "for purposes of *Younger* abstention until state appellate review is completed,"[66] so the appellate status of Lancaster's case does not change my conclusion that *Younger* abstention applies.

In Lancaster's second supplemental notice, he contends that he has "newly discovered evidence of systematic falsification of the state court record" that further shows bad faith and creates "independent federal claims outside *Younger*'s reach."[67] He contends that some entries on the state-court docket in his case have been changed or expanded in a manner that he believes shows nefarious intent. But clerical corrections to the titles of documents on a docket do not give rise to an inference of bad faith. And to the extent that Lancaster believes his discoveries support new causes of action, those should be brought in a new proceeding in state court.

---

[63] ECF Nos. 15, 16.

[64] L.R. 7-2(g).

[65] ECF No. 15 at 2.

[66] *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004).

[67] ECF No. 16 at 1, 4.

**Conclusion**

IT IS THEREFORE ORDERED that Terrell Lancaster's objections to the magistrate judge's report and recommendation **[ECF No. 14] are OVERRULED**, and the magistrate judge's report and recommendation **[ECF No. 12] is ADOPTED in its entirety**. Lancaster's complaint is **DISMISSED without leave to amend.** The Clerk of Court is directed to **CLOSE THIS CASE.**

IT IS FURTHER ORDERED that Lancaster's motion for reconsideration **[ECF No. 10] is DENIED as moot.**

U.S. District Judge Jennifer A. Dorsey
August 25, 2026